IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| David D. Stanfield, | ) | C.A. No. 2:09-2711-MBS-RSC |
| Plaintiff, | ) | |
| -versus- | ) | **REPORT AND RECOMMENDATION** |
| CitiMortgage, Inc., | ) | |
| Defendant. | ) | |

This action seeking injunctive and other relief was filed pro se by the plaintiff, David D. Stanfield, on October 19, 2009. The defendant is CitiMortgage, Inc..

The plaintiff asks this court to restrain the defendant from evicting him from his home and to award money damages for a variety of injuries ranging from mental and emotional distress to damages to his ability to purchase a future home, among others.

In the opening paragraph of his complaint and his first cause of action, the plaintiff asserts Citi failed to give him the benefit of the Home Affordable Mortgage Program (HAMP) by failing to meet its obligation to work out this matter and deal mercifully with Plaintiff because Citi received billions of bail out dollars from the Government. (See Compl. ¶ 1). Plaintiff reasons that Congress mandated guidelines required of all recipients of bail out assistance funding, and that Citi refused to obey these guidelines. Plaintiff also alleges that Defendant did wantonly and willingly conspire to deprive plaintiff of his

personal, property in violation and contempt of a congressional mandate, and that Defendant, along with the cooperation of Berkeley county court for the state of South Carolina have violated the equal protection clause of the Fourteenth Amendment.

Citi treats these allegations as asserting a claim based on a violation of Home Affordable Mortgage Program (HAMP), civil conspiracy, and a violation of due process.

In the paragraph of the complaint labeled as Plaintiff's second cause of action, Plaintiff alleges that Citi destroyed Plaintiff's credit record and his ability to enjoy Veterans Administration benefits. (Complaint ¶ 2).

The plaintiff alleges as a third cause of action that Citi violated the Equal Credit Opportunity Act of 1974, 15 U,S.C. § 1961,(ECOA) by discriminating against him because he was a veteran. (Complaint ¶ 3).

Citi treats these allegations, as a whole, as asserting a claim that foreclosure of Plaintiff's property was wrongful and moves to dismiss for failure to state a claim upon which relief may be granted. Further the defendant presents the following defenses:

> I. This Court lacks subject-matter jurisdiction because Plaintiff improperly seeks to appeal a state court judgment to federal court, which is prohibited under the *Rooker-Feldman doctrine*.
>
> II. Plaintiff's claims are barred by res judicata and collateral estoppel.

III. Citi was not required to modify Plaintiff's VA-guaranteed loan under the Home Affordable Modification Program ("HAMP"), and even if a modification were required under HAMP, Plaintiff has no private cause of action.

IV. Veterans are not a protected class under the Equal Credit Opportunity Act ("ECOA").

V. Citi is not a state actor subject to the Equal Protection or Due Process clauses of the Fourteenth Amendment.

VI. Plaintiff has no protected property interest to support a due process violation.

VII. The underlying foreclosure action was proper.

VIII. Plaintiff has not alleged a conspiracy of more than one person, and Citi cannot conspire with itself.

The plaintiff responds to these defenses in pertinent part as follows:

> **1. Answer to Item one (This court lacks subject matter jurisdiction because Plaintiff improperly seeks to appeal a state court judgement to federal court).**
>
> During the foreclosure proceedings held in Berkeley county Master of Equity's court room concerning Plaintiff's home repossession; the Honorable Robert E. Watson presiding made a distinctly prejudice statement. The federal assistance to banks and mortgage lenders (TARP) that is being garnered is a new and untested endeavor just recently undertaken by the Federal Government. There has not been sufficient time for the courts to hear cases such as this one in response to the newly applied guidelines and procedures set forth by congress for those institutions requesting taxpayer assistance to avoid their own bankruptcy's.
> Unfortunately state and local courts have only the "states quo" or the usual standard in

3

which to examine and make judgement on such cases. Judge Watson proved this theory by uttering the statement, "I can't force them to give you mortgage assistance" during the proceedings. This statement was directed to the Plaintiff and clearly displayed the court's "Status Quo" thinking. Judge Watson has rightly been aware of this understanding, that the court did not posses the ability to mandate that a company offer assistance, for many years. After the tax payer bailout (TARP) legislation was enacted this statement is no longer true. As of the present and during the time of plaintiff's foreclosure proceeding's, the county court did have the newly acquired authority to mandate that the defendant offer some assistance to Plaintiff to avoid foreclosure. Unfortunately Judge Watson did not posses the emerging knowledge of this new precedent as was demonstrated by his prejudicial statement, "I can't force them to give you mortgage assistance". This predetermined prejudice allows for a change of venue and an escalation to Federal Court where the guidelines themselves are presently emerging. This is a simple case of the law out pacing the court and the court ruling with outdated precedence. . . .

## 2. Answer to item two "Plaintiff's claims are barred by res judicata and collateral estoppel.

The general rule is that a plaintiff who has prosecuted one action against a defendant and obtained a valid final judgment is barred by <u>res judicata</u> from prosecuting another action against the same defendant where (a) the claim in the second action is one which is based on the same factual transaction that was at issue in the first; (b) the plaintiff seeks a remedy additional or alternative to the one sought earlier; and (c) the claim is of such a nature as could have been joined in the first action. Underlying this standard is the need to strike a delicate balance between the interests of the defendant and of the courts in bringing litigation to a close and the interest of the plaintiff in the vindication of a just claim.

The <u>res judicata</u> rule applies to the prosecuting party and is not a valid defense in

this case. Plaintiff was the defendant in the foreclosure matter and was brought to court unwillingly and did not prosper in any fashion from the decided verdict. . . .

**3. Answer to item three "CitiGroup was not required to modify Plaintiff's VA guaranteed loan under the Home affordable Modification Program (HAMP)".**

 **Loan Modification Terms and Procedures: (Home Affordable Mortgage Program)**
 Item 1. Participating servicer's are required to service all eligible loans under the rules of the program unless explicitly prohibited by contract; servicer's are required to use reasonable efforts to obtain waivers of limits on participation.
**Required Modifications and Optional Modifications: (Home Affordable Mortgage Program)**
 Item 4. If the NPV Test result is negative and a Home Affordable Modification is not pursued, the lender/investor **must seek** other foreclosure prevention alternatives, including alternative modification programs, deed-in-lieu and short sale programs.

 It is Plaintiff's position that CitiGroup by agreeing to the guidelines set forth by congress and accepting the tax payer assistance funding is bound by "good faith" to honor the essence of the agreement if not to the letter.
 The essence and nature of the quickly assembled (TARP) legislation was designed to assist major lenders to avoid bankruptcy while allowing homeowners to avoid foreclosure through mortgage realignment and assistance. The first portion of the (TARP) legislation was completely successful, tax payer funds were given to the requesting corporations and they in fact did avoid foreclosure and bankruptcy. Unfortunately the second portion of the legislation relied on the good faith of the participating corporations to honor their pledge to assist home owners to remain in their homes. In the case of CitiGroup this did not take place. Citigroup has not honored the mandated guidelines set forth by congress and assisted Home owners to restructure their

mortgages. Once CitiGroup was again solvent, at taxpayer expense, it was business as usual and a return to foreclosure as usual.

The (TARP) program relies strictly on the "good faith" of the participant, if servicer's do not want to follow the agreed upon guidelines, they simply do not as in this case. There has not been adequate time for the ramifications of these "bad faith" decisions to be ruled upon by the court or to be addressed by legislation in congress. Failure to assist qualified borrowers, and no government agency currently policing servicer's to make sure they live up to the terms of the contract has created a monumental task for the court and an obvious future case load. Meanwhile the "bad faith" Defendant's actually benefit from letting homes fall into foreclosure, because foreclosure means they are guaranteed an up-front payment from the sale of the home. . . .

**4. Answer to item four "Veterans are not a protected class under the Equal Credit Opportunity Act.**

The Federal Trade Commission (FTC), the nation's consumer protection agency, enforces the Equal Credit Opportunity Act (ECOA), which prohibits credit discrimination on the basis of race, color, religion, national origin, sex, marital status, age, or because of the use of public assistance. Creditors may ask you for most of this information in certain situations, but they may not use it when deciding whether to give you credit or when setting the terms of your credit.

CitiMortgage has denied Plaintiff the right to participate in a congressionally mandated mortgage assistance program on the basis that "The loan is a Veterans Administration loan". A VA loan is a mortgage guaranteed by public funds. Veterans may enter into these type loans as a reward for their service to country. VA loans place a 20% public assistance funding guarantee on each loan given allowing the purchaser to qualify with little or no money down. The Equal Credit Opportunity Act expressly forbids exclusion from consideration for lender practices based on receiving public assistance.

Servicer's modifications under this program must comply with the Equal Credit Opportunity Act and the Fair Housing Act, which prohibit discrimination on a prohibited basis in connection with mortgage transactions. Loan modification programs are subject to the fair lending laws, and servicer's and lenders should ensure that they do not treat a borrower less favorably than other borrowers on grounds such as race, religion, national origin, sex, marital or familial status, age, handicap, or receipt of public assistance income in connection with any loan modification. These laws also prohibit redlining.

Thus it is Plaintiff's contention that Defendant has violated the Equal Credit Opportunity Act by citing a publicly guaranteed loan as reason to withhold services. Plaintiff believes that the Equal Credit Opportunity Act does apply to this case.

**5. & 6. Answer to item five and six "CitiGroup is not a state actor subject to the Equal Protection or due process laws". "Plaintiff has no protected property interests to support a due process violation".**

As a result of the (TARP) bail out funding legislation and subsequent loans made to CitiGroup by the American taxpayers, the federal Government is a 34% owner of CitiGroup holdings. Quote: "CitiGroup has been one of the biggest recipients of government support since the financial services giant almost collapsed in the wake of last year's credit crisis. The ordeal left the company 34% owned by taxpayers." (Wall Street Journal Digital Report December 16, 2009).

It is an economic fact that the Federal Government acquired corporations are a separate set of corporations that were not chartered or created by the Federal Government, but the Federal Government has come into possession of and operates. These fall into two categories: incidental government corporations, those corporations temporarily in possession of the Government as a result of a seizure of property of a debtor to the Government, such as a delinquent taxpayer, usually these are awaiting auction and most are too small to note, and government-

7

acquired corporations, which are corporations
whose stock or assets have been purchased by the
Federal Government, as a result of the corporation
being adjudged to big to fail, or, in other words,
that their liquidation would present too much of a
systemic risk to the total economy of the United
States to allow the corporation to be liquidated,
bankrupted, or otherwise wound up. These include:
CitiGroup
General Motors(and others)
AIG (American International Group) (and others).
    Upon assuming ownership of said corporations
the federal Government as an unintended
consequence does now bear equal protection as well
due process requirements when dealing with said
corporate matters. . . .

### 7. Answer to item seven "the underlying foreclosure action was proper".

    Plaintiff contends that the underlying
foreclosure action was prejudice and the court was
lacking in fundamental knowledge of rapidly
changing variables that should have been
considered.
    During the foreclosure proceedings held in
Berkeley county Master of Equity's court room
concerning Plaintiff's home repossession; the
Honorable Robert E. Watson presiding made a
distinctly prejudice statement. The federal
assistance to banks and mortgage lenders (TARP)
that is being garnered is a new and untested
endeavor undertaken by the Federal Government.
There has not been sufficient time for the courts
to hear cases such as this one in response to the
newly applied guidelines and procedures set forth
by congress for those institutions requesting
taxpayer assistance to avoid their own
bankruptcy's. Unfortunately state and local courts
have only the "states quo" or the usual standard
in which to examine and make judgement on such
cases. Judge Watson proved this theory by
uttering the statement, "I can't force them to
give you mortgage assistance". This statement was
directed to the Plaintiff and clearly displayed
the court's "Status Quo" thinking. Judge Watson
has rightly been aware of this understanding that
the court did not posses the ability to mandate

that a company offer assistance, for many years.

After the tax payer bail out (TARP) legislation was enacted this statement is no longer true.  As of the present and during the time of plaintiff's foreclosure proceeding's, the county court did have the newly acquired authority to mandate that the defendant offer some assistance to Plaintiff to avoid foreclosure. Unfortunately Judge Watson did not posses the emerging knowledge of this new precedent as was demonstrated by his prejudicial statement, "I can't force them to give you mortgage assistance".

It is Plaintiff's contention that this predetermined prejudice places the foreclosure proceeding in question and affords an improper heading be applied.

## 8.  **Answer to item eight "Plaintiff has not alleged a conspiracy of more than one person, and CitiGroup cannot conspire with itself".**

Plaintiff contends that CitiGroup can and did conspire to deprive Plaintiff of his personal property.  By ignoring mandated requirements to assist Plaintiff to remain in his home, as stated above, CitiGroup along with co-conspirator, a complacent Federal Government, did conspire and ultimately deprive Plaintiff of his home.  It is the Plaintiff's contention that CitiGroup willingly disregarded a contractual agreement that would have provided Plaintiff with congressionally mandated assistance.  Likewise CitiGroup's partner (the United States Government) while mandating the assistance, provided no overview or guidance to insure that the participants in the program were acting in "good faith".  As a result together they both conspired to deprive Plaintiff of his property.  CitiGroup acted in "bad faith" and willingly conspired while the United States Government by its own complacency and trust became an unwilling but equal partner.

It is Plaintiff's contention that a conspiracy did exist as stated above.

**DISCUSSION**

The plaintiff's arguments are appealing.[1] Nevertheless they are not valid arguments to invoke federal jurisdiction for an appeal of a state court judgment in violation of the Rooker-Feldman doctrine. <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923), <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983).

". . . [U]nder what has come to be known as the *Rooker-Feldman* doctrine, lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." <u>Lance v. Dennis</u>, 546 U.S. 459, 463 (2006) (per curiam). <u>Rooker-Feldman</u> applies to "cases brought by state-court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and

---

[1] They are appealing in the same fashion that arguments that the income tax is unconstitutional or that currency is not legal tender because it is no longer backed by gold are appealing. They are so lacking in legal authority and so fanciful in thought that they are appealing. When faced with the legal proposition that CitiGroup cannot conspire with itself, the plaintiff simply argues, "a conspiracy did exist." Or to the argument that the foreclosure proceedings were proper, he replies, "predetermined prejudice places the foreclosure proceeding in question and affords an improper heading be applied." In response to the assertion that veterans are not a protected class under the Equal Credit Opportunity Act, he replies, "Plaintiff believes that the Equal Credit Opportunity Act does apply to this case." Likewise he asserts new legal propositions, "The res judicata rule applies to the prosecuting party and is not a valid defense in this case.", or he simply proclaims that the state of the law extends beyond that currently recognized by the courts, "This is a simple case of the law out pacing the court and the court ruling with outdated precedence."

10

inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)."

As the undersigned has noted on numerous occasions, under the Rooker-Feldman doctrine, a loser in state court is prohibited from filing suit in the federal district court seeking redress for an injury allegedly caused by the state court's decision. See, Davani v. Va. Dep't of Transp., 434 F.3d 712, 719 (4th Cir. 2006) (finding that the plaintiff's federal claims—unlike Plaintiff's claims in this case—did not challenge the state court claims and, therefore, were independent from the state decision); State v. Smith, No. 2:10-401- DCN-RSC, 2010 U.S. Dist. LEXIS 29882, at *12 (D.S.C. March 5, 2010) (dismissing case in which plaintiff asserted federal constitutional claims and asked court to review state court decision). "Appeals of orders issued by lower state courts must go to a higher state court." Bardes v. State, No. 2:10-559-PMD-RSC, 2010 U.S. Dist. LEXIS 35993, at *6 (D.S.C. March 11, 2010) (applying Rooker-Feldman doctrine and holding that federal court did not have jurisdiction to review state court decisions).

The defendant by brief catalogues the numerous times herein that the plaintiff asserts that his injuries flow from the state court decision. (Defendant's Reply p. 2). Indeed the very first two elements of the prayer of the plaintiff's complaint makes it

abundantly clear that he is seeking relief from the state court decision and thus the Rooker-Feldman doctrine applies:

> It is Plaintiffs wish that the Honorable Court remedy this matter as follows:
> 1. Render Judgment against Defendant, for refusing to grant mandatory assistance as dictated by congress, discriminating against Plaintiff, and causing Plaintiff to lose his home, in the amount of $370,000.00 (Three Hundred Seventy Thousand Dollars) the remaining balance owed on the home.
> 2. Issue a temporary restraining order against Defendant preventing any and all actions of eviction and possession of Plaintiffs home located at 5912 Steward Street, Hanahan, S.C. 29406.

Plaintiff's Complaint ¶ 7.

Accordingly it is recommended that the defendant's motion to dismiss be granted and this action ended in accordance with the Rooker-Feldman doctrine.

                                         Respectfully Submitted,

                                         Robert S. Carr
                                         United States Magistrate Judge

Charleston, South Carolina

July 16, 2010

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within **fourteen (14) days** of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).